EUREKA MINING AND SMELTING COMPANY, APPELLANT, *v.* FRANK WAY, *et als.*, RESPONDENTS.

POSSESSION OF TIMBER LAND—RIGHTS ACQUIRED FROM PREDECESSORS.  In a suit for trespass in cutting and removing timber, the court charged that a mere survey and marking of boundaries of public land was insufficient to entitle plaintiff to recover, but that he must have been in the actual occupation of the same, using it for the purpose for which it was adapted:  *Held*, clearly erroneous under the circumstances, as ignoring any rights of use or occupation derived from grantors.

OCCUPATION OF TIMBER LAND.  Where, in a suit for trespass in cutting and removing timber, the court charged that by the term occupancy of timber land was meant a subjection of the same to will and dominion and a use of the same for the purpose for which it was located and not a mere residence thereon, and that if plaintiff did not so use and occupy the land the verdict should be for defendant: *Held*, clearly erroneous under the circumstances, as ignoring rights derived from grantors.

TRANSFER OF RIGHTS TO USE TIMBER LAND.  The occupation or use of land valuable for timber by a person's grantors inures as much to the grantees' interest as any other act; and if such grantor would have the right to recover in an action on account thereof, his grantee would have the same right.

APPEAL from the District Court of the Sixth Judicial District, Eureka County.

This was an action to recover two thousand dollars damages for alleged trespass in cutting down and removing trees from a tract of six hundred and forty acres of land in Eureka County, claimed to be owned by and in the possession of plaintiff and to have been owned and in the possession of its predecessors for three years previously.  The answer denied that plaintiff or any of its predecessors ever was the owner, in possession or entitled to the possession of the land or any part thereof, and set up ownership and possession in defendant Way.  The cause was tried in March, 1874, before a jury.

The court, at the request of the defendant, instructed the jury as follows:

1.  "If the jury believe from the evidence that the boundaries of the land in controversy have not been distinctly marked by the plaintiff or its grantors or predecessors in interest, they will find a verdict for defendant.

2.  "If the jury believe from the evidence that the boundaries of the land in controversy have not previous to the entry of Way thereon been marked by metes and bounds, so that the boundaries could have been readily traced, and the extent of such claim easily known, they must find a verdict for the defendant.

3.  "The jury are instructed that a mere survey and marking of boundaries of the public lands is insufficient to entitle plaintiff to recover in this action.    The plaintiff must have been in the actual occupation of the same, using it for the purpose for which it was adapted.

4.  "The jury are instructed that by the term 'occupation' of timber land is meant a subjection of the same to the will and dominion and a use of the same for the purpose for which it was located, and not a mere residence thereon. And if they find that the plaintiff did not so use and occupy the land in dispute, they will find a verdict for the defendant.

5.  "The jury are instructed that if they find for defendant, their verdict will be that ' we, the jury, find for the defendant.' "

Of the above instructions, the third and fourth are specially referred to in the opinion as being found on pages 150 and 151 of the transcript.

The instructions of plaintiff, which were refused, and for the refusal of which plaintiff claimed error, were as follows:

"The jury are instructed that the only object or purpose of the law, in requiring the boundaries of a tract of timber land to be marked and defined, is to notify innocent parties of the existence and extent of the claim, or to put them upon inquiry as to the character and extent of the claim."

"The jury are instructed that if the defendant caused the survey to be made of the ranches claimed by him in the names of Reeves and McLaughlin with the intent and understanding that the lands when surveyed were to be conveyed by them to him, and he, Way, then had knowledge of the existing rights and claims of the predecessors of the plaintiff herein, he (Way) can claim no rights under the deed from Reeves and McLaughlin against the plaintiff herein."

The jury returned a verdict in favor of defendant, and judgment was entered accordingly.    Plaintiff moved for a new trial, which was refused; and it then appealed from the judgment and order.

*Hillhouse & Davenport*, for Appellant.

I.   All the instructions given at defendant's request are erroneous in this, that they each instruct that upon a certain state of facts the jury must find for defendant.   The answer denied plaintiff's title to the whole, it is true, but defendant on the trial only attempted to set up title in himself to a portion of the tract described in the complaint.

II.   The instructions in reference to occupation were so manifestly erroneous, that the mere statement of the objection demonstrates the error.   The land was taken up, lines marked, houses and fences built, and wood and timber cut thereon, and hauled therefrom by the predecessors of plaintiff, who, on December 13th, 1872, succeeded to the interest of those who had so used the land.   Way commenced his trespasses at that date.   Still the court instructed the jury that the plaintiff must have been in the *actual occupation*.   All acts of occupation and user of the land by the predecessors of plaintiff were ignored.   The acts of those predecessors in interest certainly inured to the benefit of plaintiff.   A grantee in a deed for timber land or any land succeeds to whatever interest the grantor may have had, and if the grantors or any of them of plaintiff had made use of the land for cutting wood therefrom, plaintiff certainly was entitled to claim the benefits of all acts they performed on the land.   And again, the instructions virtually say there must be a continuous use of the land, and that plaintiff should have made such use, while defendant was trespassing; in effect, that plaintiff should have driven off the trespassers in order to make use of the land.

*Thomas Wren* and *David E. Bailey*, for Respondents.

I.   The first instruction states the law in regard to marking the boundaries of the public timber lands in this State, in almost precisely the language of this Court; and so does

the second. The third and fourth should be read together, the fourth explaining the character of the possession of timber lands necessary to entitle a plaintiff to maintain the action. There must be an actual or constructive possession to maintain trespass. *Courchaine* v. *Bullion Mining Co.*, 4 Nev. 369.

II. What constitutes possession either actual or constructive of public timber lands? That character of inclosure together with continuous occupation as would entitle a person to recover in ejectment. *McFarland* v. *Culbertson*, 2 Nev. 283; *Robinson* v. *Imperial Co.*, 5 Nev. 44, and authorities therein cited.

III. If plaintiff had been ousted from the possession of the land by defendant he should have commenced his action of ejectment, not trespass. The instructions asked by plaintiff are manifestly erroneous.

IV. It is contended that inasmuch as defendant only showed a right to the possession of three hundred and twenty acres, plaintiff should have had a verdict for the trespasses supposed to have been committed on the other part of the tract. Trespasses were charged upon a tract of land a mile square; but because defendant could not deny that he cut timber within the mile, must he be held to admit that he cut timber upon every acre or fractional part of an acre?

By the Court, WHITMAN, C. J.:

The evidence in this case was conflicting, and thereon the jury found for respondents, as might properly happen. There is no force in the point that there was no justification for the verdict as an entirety, for that respondent Way had trespassed to some extent upon property proven to be that of appellant. These were material points at issue, and the verdict may be based either upon the hypothesis that respondent was rightfully in possession of three hundred and

twenty acres of the land described in the complaint; and
that his takings were confined to that area, upon both which
points there is testimony; or upon the general proposition
that appellant had no right of recovery for failure to make
out title, possession or right of possession to any of the
described property, to which end there was testimony tend-
ing; in which case there could have been no trespass against
him, as the land in such case, so far as private parties are
concerned, would have been as rightfully open to one as to
the other.

Nor was there any error in the refusal of the instructions
asked by appellant, as each contains some error of legal
excess or defect, which need not be specifically pointed out,
as undoubtedly such will be apparent to counsel upon cool
inspection.

Nor is there any error in the instructions given for re-
spondents, except in those on pages 150–151 of the trans-
cript; and in those, the error is, as claimed by counsel for
appellant, so obvious, that he who runs may read.   They
entirely ignore any rights of use or occupation which appel-
lant may have derived from its predecessors or grantors; and
this not upon the theory of non-connection; as it must be
presumed, from the instruction first given for respondents,
that the court recognized a possible chain of title or suc-
cession in interest.

Occupation and user or either by appellant's predecessors
or grantors must inure as much to its benefit as any other
act or acts.   In other words, if appellant had predecessors
or grantors, and if they or either of them would have been
entitled to recover in the present action, then so would ap-
pellant, the successor to any and all existent rights.   This
doctrine is virtually, if not in express terms, repudiated by
the instructions referred to; and the natural conclusion
therefrom is, that there must have been an actual occupation

and personal user by this identical appellant, else no recovery.

Thus the jury may have been influenced to the verdict given and so the appellant have been prejudiced.

Wherefore the order and judgment appealed from are reversed.